UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ANGELA SMITH COLOMBE, | ) | |
| | ) | |
| | ) | No. 5:20-CV-374-REW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPINION & ORDER |
| | ) | |
| SGN, Inc., | ) | |
| | | |
| Defendant, | | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court encounters a novel problem: evaluating employment claims under the provisions of the Families First Coronavirus Response Act (FFCRA) and its ephemeral Division E, the Emergency Paid Sick Leave Act (EPSLA). Plaintiff Angela Smith Colombe alleges that Defendant SGN, Inc., violated her rights under the FFCRA. *See* DE 1-1 (Complaint). Defendant moves, per Rule 12(b)(6), to dismiss the Complaint in its entirety. *See* DE 5 (Motion). Colombe responded and Defendant replied. *See* DE 6 (Response); DE 8 (Reply). The matter is ripe for review. For the reasons outlined below, the Court **GRANTS** DE 5 and dismisses the Complaint, which fails to state an actionable claim.

## I.    BACKGROUND[1]

Colombe began working for SGN as a full-time manager at a McDonald's Restaurant in Lexington, Kentucky sometime in 2016. DE 1-1 at ¶ 8. Colombe's last day working for Defendant was on March 23, 2020. *Id.* at ¶ 12. On March 25, Colombe's spouse took a COVID-19 test. *Id.* at

---

[1] The Court, as it must in the Rule 12 context, largely takes these allegations from the Complaint. *See Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996) ("We must treat as true all of the well-pleaded allegations of the *complaint*." (emphasis added)); *see also* DE 1-1 (Complaint).

¶ 13. Sometime after March 25 and sometime before April 2, Colombe's spouse received quarantine instructions (*i.e.,* to quarantine) related to the March 25 test. *Id.* at ¶ 14. The quarantine instructions applied to the entire family living at Colombe's home. *Id.* A registered nurse authored the quarantine instructions. *Id.* at 16.

On April 2, Colombe presented the quarantine instructions, via text, to her supervisors, Mark Browning and Carol Hough. *Id.* at ¶ 17. Sometime before April 11, questions regarding Colombe's quarantine instructions arose.[2] On April 11, Colombe told Hough that the quarantine would conclude on April 20 and requested to be put "back on the work schedule." *Id.* at ¶ 26. She also apologized "for any misunderstanding with the medical documents or the COVID-19 test results[.]" *Id.* at ¶ 27. Between April 11 and May 11, Plaintiff and her supervisors discussed the quarantine notice, unspecified issues about it, and Plaintiff's attempts to procure a notice with her name on it. *Id.* at ¶¶ 29–34. On May 11, Hough told Colombe that Hough and Browning wanted to meet with Colombe on May 13. *Id.* at ¶ 35. On May 12, the company representatives cancelled the May 13 meeting and did not reschedule. *Id.* at ¶ 39. On May 29, Colombe's spouse tested positive for COVID-19. *Id.* at ¶ 40. On June 1, Browning sent a text message to Colombe discussing the FFCRA and Browning's intent to send Colombe forms related to the statute. *Id.* at ¶ 41.

On August 12, 2020, Plaintiff filed the instant Complaint in Fayette Circuit Court. *See* DE 1-1. Defendant removed the federal question case to this Court on September 3, 2020. DE 1. The Complaint alleges that SGN violated the FFCRA by retaliating against Colombe for taking leave,

---

[2] The Complaint does not directly state the objections Hough or Browning had to the quarantine instructions. However, the Complaint includes allegations that Hough and Browning "had insisted that Plaintiff's doctor's note bear her own name," and that Plaintiff was required to explain "that 'false negative' was for all intents and purposes synonymous with 'positive.'" DE 1-1 at ¶¶ 31, 34.

by failing to pay her for the leave she did take, and by failing to provide her with requisite notice of the FFCRA's provisions. *See* DE 1-1. SGN promptly moved to dismiss the Complaint under Rule 12(b)(6). DE 5. SGN decries a series of fatal flaws in the pleading. The Court agrees that the Complaint fails to state a claim and must be dismissed.

## II.     STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986).

Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a . . . motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted). [Importantly here, the fateful quarantine instruction document is not part of the record; the Court must piece its content together from the allegations.]

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement." *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.).

## III.   ANALYSIS

Colombe alleges three violations of the FFCRA: 1) retaliation, 2) failure to pay, and 3) failure to provide mandated notice. DE 1-1 at 7. Defendant's main argument is that Colombe has not alleged that she actually took leave under the FFCRA (or its Division E, the EPSLA) and therefore has no cause of action under a retaliation or failure to pay theory. SGN denies leave entitlement, protected activity, and any adverse action, for retaliation purposes. DE 5 at 4–8. Defendant also argues that Colombe has not alleged that SGN failed to provide notice per the statute and that, even if SGN failed, Colombe does not have a private cause of action against it for the alleged deficiency. DE 5 at 8–9.

The FFCRA's recent enactment means there is scant caselaw interpreting the possible issues arising from the statute or the regulations.[3] *Cf. Valdivia v. Paducah Ctr. For Health & Rehab., LLC*, No. 5:20-CV-00087-TBR, 2020 WL 7364986, at *3 (W.D. Ky. Dec. 15, 2020)

---

[3] The statute authorizes implementing regulations. *See* Families First Coronavirus Response Act, Pub. L. No. 116-127, § 5111, 134 Stat. 178, 201 (March 18, 2020). The regulations appear at 29 C.F.R. §§ 826.10–.160. Some of the FFCRA regulations were amended; there are three separate versions: 1) the April 2, 2020 to April 10, 2020 version, 2) the April 10, 2020 to September 15, 2020 version, and 3) the September 15, 2020 to December 31, 2020 version. The parties do not discuss which version of the regulations govern their actions, but the parties do not allege any conduct taking place after September 15, 2020. Differences between the first and second versions are not material to this dispute.

4

(noting the dearth of case law). The Court mainly looks to the statute and regulations to determine whether Colombe has sufficiently pleaded her claims. "The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States*, 124 S. Ct. 1587, 1593 (2004) (quoting *Connecticut Nat. Bank v. Germain*, 112 S. Ct. 1146, 1149 (1992)). "Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (citing *Lamie v. United States Trustee*, 124 S. Ct. 1023, 1029–30 (2004)); *see also Rucker v. Wabash R. R. Co.*, 418 F.2d 146, 149–50 (7th Cir. 1969) (noting that the same rules of construction apply to construction of administrative regulations).

*FFCRA/EPSLA Leave*

Division E of the FFCRA is the Emergency Paid Sick Leave Act (EPSLA). §§ 5101–5111, 134 Stat. at 195–201. Under the EPSLA, "[a]n employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because: . . . (2) [t]he employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19." § 5102(a), 134 Stat. at 195. [4]

Section 5104 of the FFCRA makes it unlawful for an employer "to discharge, discipline, or in any other manner discriminate against any employee who . . . takes leave in accordance with

---

[4] Other qualifying reasons for EPSLA leave include: a quarantine order stemming from the government, experiencing symptoms of COVID-19 and in the process of seeking a medical diagnosis, caring for an individual subject to a quarantine order, caring for a child if the child's school or place of care has closed due to COVID-19 precautions, or experiencing any other substantially similar condition specified by Health and Human Services. *See* § 5102(a)(1)–(6), 134 Stat. at 195–96. Colombe alleged in the Complaint only that she and her household were subject to a quarantine order from a healthcare provider. The Court rejects any effort to expand the allegations via briefing. *See* DE 6, at 5 (attempting to invoke "caring for an individual" under quarantine as applicable). That assertion, absent from the Complaint, is not one the Court will consider. Being part of a household and caring for an individual are not the same concept.

this Act[.]" 134 Stat. at 196–97; *see also* 29 C.F.R. § 826.150(a). Section 5105(b) makes willful

violation of Section 5104 equivalent to a violation of "section 15(a)(3) of the Fair Labor Standards

Act of 1938 [(FLSA)] (29 U.S.C. 215(a)(3)); and . . . [such a violation shall] be subject to the

penalties described in sections 16 and 17 of [the FLSA] (29 U.S.C. 216; 217) with respect to such

violation." 134 Stat. at 197; *see also* 29 C.F.R. § 826.150(b)(2). Conceptually, then, FFCRA

retaliation "may be brought under the FLSA." *See Kofler v. Sayde Steeves Cleaning Serv., Inc.*,

No. 8:20-CV-1460-T-33AEP, 2020 WL 5016902, at *2 (M.D. Fla. Aug. 25, 2020).[5] A prima facie

case of retaliation under the FLSA requires "the plaintiff [] prove that (1) she engaged in protected

activity under the FLSA; (2) her exercise of this right was known by the employer; (3) the

employer took an employment action adverse to her; and (4) there was a causal connection between

the protected activity and the adverse employment action." *Pettit v. Steppingstone, Center for the*

*Potentially Gifted*, 429 F. App'x 524, 530 (6th Cir. 2011) (citing *Adair v. Charter Cnty. of Wayne*,

452 F.3d 482, 489 (6th Cir. 2006)).

Here, Colombe must show (based on her allegations) that she took leave under the EPSLA

to establish the "protected activity" prong of the FFCRA retaliation claim. *See* 29 C.F.R. §

826.150(a) (noting that taking "Paid Sick Leave under the EPSLA" is a protected act).[6] Similarly,

for her failure to grant paid sick leave under the FFCRA, Colombe must show that SGN

erroneously denied her paid leave she was entitled to receive under the EPSLA. Section 5105(a)

makes failure to provide sick leave for qualifying reasons coequal to failing "to pay minimum

wages in violation of section 6 of the [FLSA] (29 U.S.C. 206)[] and [subjects the employer] to the

---

[5] Here, unlike the plaintiff in *Kofler*, Colombe did not bring separate claims under the FFCRA and
the FLSA. *See Kofler*, 2020 WL 5016902, at *4 n.1. There, the court declined to rule on whether
bringing separate claims was superfluous. *Id.*

[6] Colombe does not claim she filed a complaint or instituted a proceeding related to the EPSLA or
testified in any such enforcement proceeding. Those are other types of protected conduct.

penalties described in sections 16 and 17 [of the FLSA] (29 U.S.C. 216; 217) with respect to such violation." 134 Stat. at 197; *see also* 29 C.F.R. § 826.150(b)(1). In other words, taking valid leave pursuant to the provisions of the EPSLA is a necessary condition for success on two of Colombe's claims. The Complaint does not supply this predicate.

To trigger leave under the EPSLA, the employee must provide, prior to taking leave, documentation containing "(1) Employee's name; (2) Date(s) for which leave is requested; (3) qualifying reason for the leave; [] (4) Oral or written statement that the Employee is unable to work because of the qualified reason for leave[; and (5)] . . . the name of the health care provider who advised the Employee to self-quarantine due to concerns related to COVID-19." 29 C.F.R. § 826.100 (a), (c).[7] The Complaint, at least regarding allegations describing the relevant mechanics, is bare: Colombe stopped working on March 23 and she provided a quarantine notice to her employer on April 2. DE 1-1 at ¶¶ 12, 17. Outside the Complaint, Colombe specifically concedes that "Plaintiff's leave started in late March[.]" DE 6 at 8; *see* DE 1-1 ¶ 12 (citing last day of work as March 23, 2020). Defendant argues that this chronology forecloses relief because the FFCRA and EPSLA did not go into effect until the beginning of April. DE 5 at 4. Thus, Colombe could not have taken leave *pursuant* to the FFCRA and the EPSLA because the statute had not taken effect when her leave began.

Despite Colombe's concession, she argues that she "exercised her FFCRA rights within the enforcement period." DE 6 at 8. Colombe's argument, as to the pre-April period, ignores the plain language of the statute and regulations. *See* § 5108, 134 Stat. at 198 ("This Act, and the requirements under this Act, shall take effect not later than 15 days after the date of enactment of

---

[7] The regulations prescribe different requirements depending on the qualifying reason. *See* 29 C.F.R. § 826.100 (b)–(e). The first four requirements remain constant. *See* 29 C.F.R. § 826.100 (a).

this Act."), 220 (noting March 18 enactment); *see also* 29 C.F.R. § 826.10(b)(1) ("This part became operational on April 1, 2020, and effective on April 2, 2020"); *cf.* 29 C.F.R. § 826.100(a) ("An Employee is required to provide the Employer documentation containing the following information *prior to taking* Paid Sick Leave under the EPSLA[.]" (emphasis added)). If Colombe started leave in late March, it could not be pursuant to a mechanism that became law in early April.

Still, Colombe plausibly contends that as of April 2 both her chance at leave and her request for leave ripened, with statutory effectiveness and the April 2 instructions text from her to her bosses. The Court turns then to whether Colombe took EPSLA leave at that time, and the analysis hinges on whether she states a claim for entitlement to such leave.[8]

Colombe does not allege facts suggesting that, before or after the enforcement period, she followed the necessary steps to take EPSLA leave. The Complaint allegations foreclose at least one requirement: dates of leave requested. Colombe alleges that she told Hough and Browning on April 11, almost three weeks after her alleged last day of work, that her quarantine would end on April 20 and that she was ready to be put back on the schedule. DE 1-1 at ¶ 26. The Complaint does not contend that the quarantine instruction, nor Colombe's conversations with her employer, included a proposed end of leave at the time she began or requested to begin leave.

Perhaps more importantly, the parties' arguments and concessions foreclose other requirements. The provided quarantine instruction was not signed or provided by a health care provider as defined by the statute and regulations. *See* DE 1-1 at 16 (noting that the quarantine instruction was authored by "Registered Nurse Sarah Robinson").[9] The quarantine instruction also

---

[8] The Court also sees plausible adverse action, given efforts to get back onto the work schedule that, inferentially at least, did not succeed. That aspect is not a dismissal basis.

[9] Under the statute, a "health care provider" has the same meaning as the meaning "in section 101 of the [FMLA]." § 5110(4). A "health care provider," according to the regulations, has the same meaning as its definition under the Family and Medical Leave Act (FMLA). 29 C.F.R. §

did not include Colombe's name. *See* DE 6 at 9–10 ("While Plaintiff had marked out the patient name on the quarantine directive, it was clear [from the address located on the directive] that it was applicable to Plaintiff."); *id.* at 10 ("Even if Plaintiff had not marked out the name, the directive would have still not featured Plaintiff's name because she was not the patient."). On the face of the Complaint, Colombe fails to allege the necessary predicates needed to take leave.[10]

The § 826.20 (a)(1)(ii) leave reason applies if the employee "has been advised by a health care provider to self-quarantine due to concerns related to COVID-19." The requisite documentation, again a pre-leave predicate under the governing reg, must include "the name of the health care provider." § 826.100(c). Simply put, Colombe alleges that the involved provider— the quarantine instruction author—was a Registered Nurse. With all respect due that most

---

826.20(a)(3) (pointing to 29 C.F.R. § 825.102). The FMLA defines a "health care provider" as "a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or [ ] any other person determined by the Secretary to be capable of providing health care services." 29 U.S.C. § 2611(6)(A)–(B). Under the FMLA contemplated regulations, health care provider is defined as "(i) [a] doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the state in which the doctor practices; or (ii) any other person determined by the Secretary to be capable of providing health care services." 29 C.F.R. § 825.102. The regulation, in pertinent part, further defines "others capable of providing health care services" as including "[n]urse practitioners, nurse-midwives, clinical social workers and physician assistants who are authorized to practice under State law and who are performing within the scope of their practice as defined under State law[.]" *Id.* Registered Nurse Sarah Robinson provided the quarantine instruction. DE 1-1 at ¶ 16. Under Kentucky law, a "registered nurse" is not the same as a "nurse practitioner." *See* KRS 314.011(5), (7), (8) (defining "registered nurse" as "one who is licensed or holds the privilege under the provisions of this chapter to engage in registered nurse practice" and "advanced practice registered nurse" as "a certified nurse practitioner, certified registered nurse anesthetist, certified nurse midwife, or clinical nurse specialist, who is licensed to engage in advance practice registered nursing pursuant to KRS 314.042").

[10] Counsel for Colombe states in response that counsel has discussed the issue with unnamed "Department of Labor (DOL) representatives" and that Colombe "need not use any magical legal language to exercise her rights under the FFCRA." DE 6 at 6. Such extra-pleading representations have no legal effect here. The Court requires no magical words but does apply the law as written. Colombe may not need to invoke specific *language* when taking leave under the FFCRA and the EPSLA, but she still must provide the requisite *information* to her employer.

honorable profession, an RN does not qualify under the applicable statute and regulations, as footnote 9 documents.

The Court thus finds that the Complaint fails to state a claim on entitlement to leave; this sinks the wage claim. As for retaliation, the statutory scope for protected activity is quite narrow. Section 5104 bars discrimination against an employee who "takes leave in accordance with this Act" or formally participates in enforcement proceedings. 134 Stat. at 197. Colombe asserts only the first variety, but as the Court has found, she did not have the right to and did not take FFCRA leave. Further, unlike, *e.g.*, the FMLA anti-retaliation statute, FFCRA does not extend to requests for or attempts at leave. The FMLA broadly guards against interference with "the attempt to exercise" a right to leave. 29 U.S.C. § 2615(a)(1). The FFCRA protects only an employee "who— takes leave in accordance with this Act." § 5104, 134 Stat. at 197. The Complaint, thus, does not allege actionable conduct relative to retaliation.

Accordingly, the Court dismisses the retaliation and non-payment theories for failure to state a claim upon which relief can be granted.

*Notice*

Colombe next alleges that SGN failed to provide adequate notice of the provisions of the FFCRA and the EPSLA. *See* DE 1-1 at ¶¶ 51–53. The EPSLA requires employers to give notice of the requirements of the Act to their employees. Specifically, the employer "shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees are customarily posted, a notice, to be prepared or approved by the Secretary of Labor, of the requirements described in this Act." § 5103(a), 134 Stat. at 196. The pertinent regulation provides that "[e]very Employer covered by FFCRA's paid leave provisions is *required to post and keep posted on its premises*, in conspicuous places a notice explaining the FFCRA's paid leave

provisions and providing information concerning the procedures for filing complaints of violations of the FFCRA with the Wage and Hour division." 29 C.F.R. § 826.80(a) (emphasis added). "An Employer *may* satisfy this requirement by emailing or direct mailing this notice to Employees[.]" 29 C.F.R. § 826.80(b).

Based on a plain reading of the statute and regulation, an employer is only *required* to post the notice on its premises and *may* satisfy the requirement by e-mail. The provisions require no more. Colombe never alleges that SGN failed to post notice on its premises. She does, however, allege that she received permissive notice in June. Colombe's spouse was diagnosed with COVID-19 on May 29 and, three days later on June 1, Browning sent Colombe information regarding leave under the FFCRA. *See* DE 1-1 at ¶¶ 40–41. While Colombe argues that the delay between the March 23 and June 1 is sufficient to show that SGN failed to give notice, Colombe ascribes no legal significance to the delay. *See* DE 6 at 9. The delay would only matter, in the context of a violation, if SGN had failed to post notice on its premises up until June 1. No Complaint content supports the conclusion.

In response, Colombe alleges that "Defendant admits it did not post or even mention the FFCRA to Plaintiff until June 1, 2020." DE 6 at 9. This argument fails for two reasons. First, SGN never admitted to failing to post FFCRA notice on its premises. Second, Colombe cannot amend the Complaint, by injecting new allegations regarding failure to post notice, in responsive briefing. *See Bates v. Green Farms Condo Ass'n*, 958 F.3d 470, 483–84 (6th Cir. 2020). "If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint." *Id.* (quoting *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.

1993)). The Complaint fails to allege facts sufficient to support the conclusion that SGN did not post notice on its premises per the statute and regulations.

Further, as SGN argues, Division E does not attach enforcement mechanics to a notice default. The enforcement provisions extend to paid leave denial (§ 5102) and to willful retaliation (§ 5104). *See* § 5105, 134 Stat. at 197. The enforcement section does not provide a tool, and certainly no private action, with respect to a failure to comply with § 5103, the notice section.

Thus, the Court dismisses any claim centered on deficient posting or notice.

## IV.    CONCLUSION

In sum, Colombe's Complaint fails to allege facts sufficient to plausibly support her claims against SGN. Accordingly, the Court **GRANTS** DE 5. The Complaint is dismissed, in full, with prejudice. The Court will issue a separate Judgment.

This the 29th day of March, 2021.

Signed By:

_Robert E. Wier_

**United States District Judge**